## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENESSEEE
## MEMPHIS DIVISION

CHARLTON BATTS and                              )
XYLIA SPARKS-DAVIS, on behalf of                )
themselves and all others similarly situated,   )
                                                )
          Plaintiffs,   )
                                                )    Case No. _____
     v.                        )
                                                )
EVOLVE BANK & TRUST,                            )
                                                )
          Defendant.    )


## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Charlton Batts ("Batts") and Xylia Sparks-Davis, individually, by and through their undersigned counsel, bring this class action lawsuit against Evolve Bank & Trust ("Evolve," or "Defendant"), on behalf of themselves and all others similarly situated, and allege, based upon information and belief and the investigation of their counsel as follows:

    1.     Plaintiff Charlton Batts is a citizen and resident of Greenville, North Carolina.

    2.     Plaintiff Xylia Sparks-Davis is a citizen and resident of Wilmington, North Carolina.

    3.     Defendant Evolve Bank & Trust is a bank and trust formed under Arkansas law with a principal place of business located at 6070 Poplar Avenue, Memphis, Tennessee 38119.

## JURISDICTION AND VENUE

    4.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are Class members who are diverse from Defendant, and (4) there are more than 100 Class members.

5.      This Court has general personal jurisdiction over Defendant because Defendant is a resident of this state.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of this district.

## FACTUAL ALLEGATIONS

7.      Defendant is based in Memphis, Tennessee and provides banking and financial services to individuals, businesses, and technology companies.

8.      Defendant provides certain banking services which allows other customer-facing technology companies to integrate Defendant's banking and financial services into their own product offerings.

9.      Defendant's customers, like Plaintiff and Class members, provided certain Personal Identifying Information ("PII") to Defendant, which is necessary to obtain Defendant's services.

### I.      The Data Breach

10.     According to Defendant's own website, a cyber security incident occurred in late May of 2024 which compromised PII including but not limited to social security numbers, bank account numbers, and contact information.[1]

11.     Defendant provided further information via a press release:

> In late May 2024, Evolve Bank & Trust identified that some of its systems were not working properly. While it initially appeared to be a hardware failure, we subsequently learned it was unauthorized activity. We engaged cybersecurity specialists to investigate and determined that unauthorized activity may have been the cause. We promptly initiated our incident response processes and stopped the attack. The Bank has seen no new unauthorized activity since May 31, 2024. We engaged outside specialists to investigate what

---

[1]      https://www.getevolved.com/about/news/cybersecurity-incident/substitute-notice-of-data-breach/

happened and what data was affected, as well as a firm to help us restore our services. We reported this incident to law enforcement.

While the investigation is ongoing, we want to share some important information about what we know so far. At this time, current evidence shows the following:

- This was a ransomware attack by the criminal organization, LockBit.

- They appear to have gained access to our systems when an employee inadvertently clicked on a malicious internet link.

- There is no evidence that the criminals accessed any customer funds, but it appears they did access and download customer information from our databases and a file share during periods in February and May.

- The threat actor also encrypted some data within our environment. However, we have backups available and experienced limited data loss and impact on our operations.

- We refused to pay the ransom demanded by the threat actor. As a result, they leaked the data they downloaded. They also mistakenly attributed the source of the data to the Federal Reserve Bank.[2]

12.    Defendant's website further states that the breach affected both "personal banking customers, as well as customers of our Open Banking partners."[3]

13.    Defendant did not state why they were unable to prevent the Data Breach or which security feature(s) failed.

14.    Defendant did not state why it was unable to detect the Data Breach when it began in February 2024.

---

[2] *Id.*
[3] *Id.*

15.     Defendant failed to prevent the Data Breach because they did not adhere to commonly accepted security standards and failed to detect that their databases were subject to a security breach.

16.     This Data Breach was a direct result of Defendant's failure to implement adequate, reasonable, and commonly accepted cyber-security procedures and protocols necessary to protect PII and failed to detect that their databases were subject to a security breach.

17.     Defendant disregarded the rights of Plaintiffs and Class Members (defined below) by, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard PII; failing to take standard and reasonably available steps to prevent the Data Breach; failing to monitor and timely detect the Data Breach; and failing to provide Plaintiffs and Class Members prompt and accurate notice of the Data Breach.

## II.    The Value of PII.

18.     Defendant is aware, or should be aware, that the PII it collects is highly sensitive, and of significant value to those who would use it for wrongful purposes.

19.     Personally identifiable information is a valuable commodity to identity thieves. As the FTC recognizes, with PII identity thieves can commit an array of crimes including identify theft, medical and financial fraud.[4] Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII on multiple underground Internet websites.

---

[4]     Federal Trade Commission, Warning Signs of Identity Theft, https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last visited March 19, 2020.)

20.     The ramifications of Defendant's failure to keep PII secure are long lasting and severe.  Once PII is stolen, fraudulent use of that information and damage to victims may continue for life.

21.     The Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines.  Such fraud may go undetected until debt collection calls commence months, or even years, later.  Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.  Each of these fraudulent activities is difficult to detect.  An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud.  Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

22.     Moreover, it is not an easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[5]

23.      This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card

---

[5] Victims of Social Security Number Theft Find It's Hard to Bounce Back, NPR, Brian Naylor, Feb. 9, 2015, available at http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited March 19, 2020).

information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[6]

24.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences if its data security systems were breached, including, the significant costs that would be imposed on patients as a result of a breach.

### III.    Plaintiffs Charlton Batts and Xylia Sparks-Davis PII were Compromised in the Data Breach and Suffered an Actual Injury

25.    Plaintiff Charlton Batts and Xylia Sparks-Davis are customers of Landa App ("Landa").  Landa is a real estate investing app that allows individuals to become investors in real estate properties from their phone. According to Landa, banking services are "provided directly by Evolve Bank & Trust."  In order to provide Defendant's banking services to their customers, including Plaintiff and Class members, Landa provides customers' PII to Defendant.

26.    Plaintiff Batts has received information indicating that unknown individuals have tried to open accounts in his name as a result of the data breach.

27.    Plaintiff Batts has also been locked out of his brokerage account while at the same receiving notifications that someone else has attempted to access the same accounts.

28.    As a result of the Data Breach, Plaintiffs have and will continue to spend time trying to mitigate the consequences of the Data Breach. This includes time spent verifying the legitimacy of communications related to the Data Breach, and self-monitoring their accounts and credit reports to ensure no fraudulent activity has occurred.

---

[6] Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers, IT World, Tim Greene, Feb. 6, 2015, available at http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited March 19, 2020).

29.     Plaintiffs suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and has anxiety and increased concerns for the loss of their privacy.

30.     This time has been lost forever and cannot be recaptured. The harm caused to Plaintiffs cannot be undone.

31.     Plaintiffs further suffered actual injury in the form of damages to and diminution in the value of their PII—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

32.     Plaintiffs have suffered imminent and impending injury arising from the present and ongoing risk of fraud, identity theft, and misuse resulting from their PII being placed in the hands of cybercriminals.

33.     Future identity theft monitoring is reasonable and necessary and such services will include future costs and expenses.

34.     Plaintiffs have a continuing interest in ensuring that their PII, which, upon information and belief, remains in Defendant's control, is protected, and safeguarded from future breaches.

### IV.    Plaintiff's and Class Members' Suffered Damages

35.     The ramifications of Defendant's failure to keep Patients' PII secure are long lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.

36.     The PII belonging to Plaintiffs and Class Members is private, sensitive in nature, and was left inadequately protected by Defendant who did not obtain Plaintiffs' or Class Members'

consent to disclose such PII to any other person as required by applicable law and industry standards.

37.    The Data Breach was a direct and proximate result of Defendant's failure to: (a) properly safeguard and protect Plaintiffs' and Class Members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and common law; (b) establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class Members' PII; and (c) protect against reasonably foreseeable threats to the security or integrity of such information.

38.    Defendant had the resources necessary to prevent the Breach, but neglected to adequately invest in data security measures, despite its obligation to protect patient data.

39.    Had Defendant remedied the deficiencies in its data security systems and adopted security measures recommended by experts in the field, it would have prevented the intrusions into their systems and, ultimately, the theft of PII.

40.    As a direct and proximate result of Defendant's wrongful actions and inactions, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the Data Breach on their lives. The U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems" and that "resolving the problems caused by identity theft [could] take more than a year for some victims."[30]

41.    To date, Defendant has failed to offer adequate identity monitoring services to affected individuals given the type of data stolen.  They fail to provide for the fact that victims of

Data Breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud, and they entirely fail to provide any compensation for the unauthorized release and disclosure of Plaintiffs' and Class Members' PII.

42.    As a result of the Defendant's failures to prevent the Data Breach, Plaintiffs and Class Members have suffered, will suffer, or are at increased risk of suffering:

a.    The compromise, publication, theft, and/or unauthorized use of their PII;

b.    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

c.    Lost opportunity costs and lost wages associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

d.    The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake appropriate measures to protect the PII in its possession; and

e.    Current and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, remediate, and repair the impact of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

43.    In addition to a remedy for the economic harm, Plaintiffs and Class Members maintain an undeniable interest in ensuring that their PII is secure, remain secure, and are not subject to further misappropriation and theft.

44.     Had Defendant remedied the deficiencies in its data security systems and adopted security measures recommended by experts in the field, they would have prevented the intrusions into its systems and, ultimately, the theft of PII.

45.     The United States Government Accountability Office released a report in 2007 regarding Data Breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[7]

46.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a Data Breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[8]

47.     Identity thieves use stolen personal information such as Social Security Numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

48.     The United States Government Accountability Office released a report in 2007 regarding Data Breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[24]

49.     Identity thieves use stolen personal information such as Social Security Numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

---

[7] *See Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. Government Accountability Office, June 2007, *2, https://www.gao.gov/new.items/d07737.pdf (last visited October 28, 2020) ("GAO Report").
[8] *See* https://www.identitytheft.gov/Steps (last visited October 28, 2020).

50.    Identity thieves can also use Social Security Numbers to, *inter alia*, obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name. A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information.[9]

51.    What's more, PII constitutes a valuable property right, the theft of which is gravely serious.[10] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber theft include heavy prison sentences.  Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

52.    It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs versus when it is discovered, and between when PII and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding Data Breaches:[11]

53.    [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have

---

[9]    Jason   Steele, *Credit   Card   and   ID   Theft   Statistics,* October   24,   2017, https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php (last visited last visited October 28, 2020).

[10] *See, e.g*., John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets") (citations omitted).

[11] See GAO report, supra n. 7, at p. 29.

been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from Data Breaches cannot necessarily rule out all future harm.

54.    PII and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

55.    There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiffs and Class Members must vigilantly monitor their financial accounts for many years to come.

## CLASS ACTION ALLEGATIONS

56.    Plaintiffs seek relief on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure, Rule 23 as a representative of the Class defined as follows:

> All persons whose PII was compromised as a result of the Data Breach that Defendant discovered in or around late May 2024.

57.    Defendant is excluded from the Class as well as any entity in which Defendant has a controlling interest, along with Defendant's legal representatives, officers, directors, assignees and successors.  Also excluded from the Class is any judge to whom this action is assigned, together with any relative of such judge, and the spouse and children of any such persons, and the members of the judge's staff and their children.

58.    Plaintiffs hereby reserve the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

59.     <u>Numerosity</u>. Consistent with Rule 23, the Class is so numerous that joinder of all members is impracticable, evidenced by the large number of individuals presently known to have been injured by Defendant's conduct. The Class is ascertainable by records in the possession of Defendant or third parties.

60.     <u>Commonality</u>. This action involves common questions of law and fact that predominate over any questions affecting individual Class Members. The common questions include:

a.   Whether Defendant had a duty to protect Plaintiffs' and Class Members' sensitive PII;

b.   Whether Defendant knew or should have known of the susceptibility of its systems to a Data Breach;

c.   Whether Defendant's security measures to protect its systems were reasonable considering best practices recommended by data security experts;

d.   Whether Defendant was negligent in failing to implement reasonable and adequate security procedures and practices;

e.   Whether Defendant's failure to implement adequate data security measures allowed the breach of its data systems to occur;

f.   Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the unlawful exposure of the Plaintiffs' and Class Members' PII;

g.   Whether Plaintiffs and Class Members were injured and suffered damages or other losses because of Defendant's failure to reasonably protect its systems and data network; and,

h.   Whether Plaintiffs and Class Members are entitled to relief.

61.    Typicality. Plaintiffs' claims are typical of those of other Class Members.  Plaintiffs had their PII exposed in the Data Breach. Plaintiff and Class members were injured and suffered damages in substantially the same manner, have the same claims against Defendant relating to the same course of conduct, and are entitled to relief under the same legal theories.

62.    Adequacy. Plaintiffs are adequate representatives of the Class because they are members of the Class they seek to represent; are committed to pursuing this matter against Defendant to obtain relief for the Class; and have no conflicts of interest with the Class. Moreover, Plaintiffs' attorneys are competent and experienced in litigating class actions, including privacy litigation of this kind. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

63.    Superiority. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class Member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

14

64. <u>Injunctive and Declaratory Relief</u>. Class certification is also appropriate under Rule 23. Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

65. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.    Whether Defendant owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their PII;

    b.    Whether Defendant's security measures to protect its data systems were reasonable considering best practices recommended by data security experts;

    c.    Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

    d.    Whether Defendant failed to take commercially reasonable steps to safeguard employee, provider and patient PII;

    e.    Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach; and

    f.    Whether Defendant failed to comply with its statutory and regulatory obligations.

66.     Finally, all members of the proposed Class are readily ascertainable. Defendant has access to its patients' names and addresses affected by the Data Breach. Using this information, Class Members can be identified and ascertained for the purpose of providing notice.

## FIRST CAUSE OF ACTION
### NEGLIGENCE

67.     Plaintiffs restate and reallege the preceding paragraphs as if fully set forth herein.

68.     Defendant had full knowledge of the sensitivity of PII and the types of harm that Plaintiffs and Class Members could and would suffer if such information was wrongfully disclosed.

69.     Defendant owed a duty of care to Plaintiff and Class members to use reasonable means to secure and safeguard the entrusted PII, to prevent its unauthorized access and disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems.  These common law duties existed because Plaintiff and Class members were the foreseeable and probable victims of any inadequate security practices.  In fact, not only was it foreseeable that Plaintiff and Class members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, but Defendant knew that it was more likely than not Plaintiffs and Class members would be harmed by such exposure of their PII.

70.     Further, by assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant also had a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period and to give prompt notice to those affected in the case of a Data Breach.

16

71.    Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

72.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

73.    Defendant breached its duties, and thus was negligent and/or grossly negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

    b.  Failing to adequately monitor the security of its networks and systems;

    c.  Failing to periodically ensure that its email system had plans in place to maintain reasonable data security safeguards;

    d.  Allowing unauthorized access to Class Members' PII;

    e.  Failing to detect in a timely manner that Class Members' PII had been compromised; and

    f.  Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

74.    It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' PII would result in injury to Class Members.  Further, the breach of security was

17

reasonably foreseeable given the known high frequency of cyberattacks and Data Breaches in the data storage and financial industries.

75.    It was therefore foreseeable that the failure to adequately safeguard Class Members' PII would result in one or more types of injuries to Class Members.

76.    There is a temporal and close causal connection between Defendant's failure to implement security measures to protect the PII and the harm suffered, or risk of imminent harm suffered by Plaintiffs and the Class.

77.    Plaintiffs and the Class Members had no ability to protect their PII that was in Defendant's possession.

78.    Defendant was able to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

79.    Defendant had a duty to put proper procedures in place in order to prevent the unauthorized dissemination of Plaintiffs' and Class Members' PII.

80.    Defendant admitted that Plaintiffs' and Class Members' PII was wrongfully disclosed to unauthorized third persons as a result of the Data Breach.

81.    As a result of Defendant's negligence and/or gross negligence, Plaintiffs and the Class Members have suffered and will continue to suffer damages and injury including, but not limited to: out-of-pocket expenses associated with procuring robust identity protection and restoration services; increased risk of future identity theft and fraud, including the costs associated therewith; time spent monitoring, addressing and correcting the current and future consequences of the Data Breach; and the necessity to engage legal counsel and incur attorneys' fees, costs and expenses.

82.     Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

83.     Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (a) strengthen their data security systems and monitoring procedures; (b) submit to future annual audits of those systems and monitoring procedures; and (c) continue to provide adequate credit monitoring to all Class Members.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE *PER SE***

84.     Plaintiffs restate and reallege the preceding paragraphs as if fully set forth herein.

85.     Pursuant to the Federal Trade Commission Act (15 U.S.C. § 45), Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

86.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant's, of failing to use reasonable measures to protect PII.  The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

87.     Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect employee and patient PII and not complying with applicable industry standards, as described in detail herein.  Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, and the foreseeable consequences of a Data Breach including, specifically, the damages that would result to Plaintiffs and Class Members.

88.     Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se* as Defendant's violation of the FTC Act establishes the duty and breach elements of negligence.

19

89.     Plaintiffs and Class Members are within the class of persons that the FTC Act was intended to protect.

90.     The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against.  The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

91.     Pursuant to the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), Defendant had a duty to protect the security and confidentiality of Plaintiffs' and Class Members' PII.

92.     Defendant breached its duties to Plaintiffs and Class Members under the Gramm-Leach-Bliley Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

93.     Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

94.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

95.     The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of its duties.  Defendant knew or should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their PII.

96.     As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

97.     Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (a) strengthen its data security systems and monitoring procedures; (b) submit to future annual audits of those systems and monitoring procedures; and (c) continue to provide adequate credit monitoring to all Class Members.

### THIRD CAUSE OF ACTION
### INVASION OF PRIVACY AND PUBLCI DISCLSOURE OF PRIVATE FACTS

98.     Plaintiffs restate and reallege paragraphs all preceding paragraphs as if fully set forth herein.

99.     At all times during Plaintiffs' and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiffs' and Class Members' PII.

100.     Plaintiffs and Class Members provided their PII to Defendant with the explicit and implicit understandings that Defendant would protect and not permit PII to be disseminated to any unauthorized parties.

101.     Plaintiffs and Class Members also provided their PII to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect such PII from unauthorized disclosure.

102.     Due to Defendant's failure to prevent, detect, or avoid the Data Breach from occurring by, inter alia, following industry standard information security practices to secure Plaintiffs' and Class Members' PII, Plaintiffs' and Class Members' information was publicly disclosed and misappropriated to unauthorized third parties beyond Plaintiffs' and Class Members' confidence, and without their express permission.

103.    Disclosure of the Plaintiffs' and Class Members' PII are not of any legitimate public concern and continued disclosures of such highly sensitive and personal information would be, is and will continue to be, offensive to Plaintiffs, Class Members and other reasonable people.

104.    As a direct and proximate cause of Defendants' actions and/or omissions, Plaintiffs and Class Members have suffered damages.

105.    But for Defendant's disclosure of Plaintiffs' and Class Members' PII in violation of the parties' understanding of confidence, their protected information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiffs' and Class Members' protected information, as well as the resulting damages.

106.    The injury and harm Plaintiffs and Class Members suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiffs' and Class Members' PII.

107.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from medical fraud, financial fraud and identity theft; (v) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of customers in their

continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

108.    As a direct and proximate result of Defendant's breaches, Plaintiffs and Class Members have suffered and will continue to suffer injury and/or harm.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**

109.    All preceding paragraphs are incorporated herein by reference as though fully set forth herein.

110.    Plaintiffs and Class members have an interest, both equitable and legal, in their PII that was conferred upon, collected by, and maintained by Defendant and that was ultimately compromised in the data breach.

111.    Defendant, by way of their acts and omissions, knowingly and deliberately enriched themselves by saving the costs they reasonably should have expended on security measures to secure Plaintiffs' and Class members' PII.

112.    Defendant also understood and appreciated that the PII pertaining to Plaintiffs and Class members was private and confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that PII.

113.    Instead of providing for a reasonable level of security that would have prevented the breach—as is common practice among companies entrusted with such PII—Defendant instead consciously and opportunistically calculated to increase their own profits at the expense of Plaintiffs and Class members. Nevertheless, Defendant continued to obtain the benefits conferred on them by Plaintiffs and Class members. The benefits conferred upon, received, and enjoyed by

23

Defendant were not conferred gratuitously, and it would be inequitable and unjust for Defendant to retain these benefits.

114.    Plaintiffs and Class members, on the other hand, suffered as a direct and proximate result. As a result of Defendant's decision to profit rather than provide requisite security, and the resulting breach disclosing Plaintiffs and Class members' PII, Plaintiffs and Class members suffered and continue to suffer considerable injuries in the forms of, *inter alia*, attempted identity theft, time and expenses mitigating harms, diminished value of PII, loss of privacy, and increased risk of harm.

115.    Thus, Defendant engaged in opportunistic conduct in spite of its duties to Plaintiffs and Class members, wherein they profited from interference with Plaintiff and Class members' legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendant to retain the benefits it derived as a consequence of its conduct.

116.    Accordingly, Plaintiffs and Class members respectfully request that this Court award relief in the form of restitution or disgorgement in the amount of the benefit conferred on Defendant as a result of their wrongful conduct, including specifically, the amounts that Defendant should have spent to provide reasonable and adequate data security to protect Plaintiffs' and Class members' PII, and compensatory damages.

### FIFTH CAUSE OF ACTION
**INJUNCTIVE AND DECLARATORY RELIEF**

117.    Plaintiffs restate and reallege the preceding paragraphs as if fully set forth herein.

118.    Plaintiffs seek a declaration that: (i) Defendant's existing data security measures do not comply with its contractual obligations and duties of care; and (ii) in order to comply with its contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

24

a.  Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b.  Engaging third-party security auditors and internal personnel to run automated security monitoring;

c.  Auditing, testing and training their security personnel regarding any new or modified procedures;

d.  Segmenting customer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other systems;

e.  Purging, deleting and destroying PII not necessary for its provisions of services in a reasonably secure manner;

f.  Conducting regular database scans and security checks;

g.  Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h.  Educating their patients and their guarantors about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps they should take to protect themselves.

119.  As a direct result of Defendant's knowing violations of the FTCA and industry standards, Class Members are entitled to a declaration that: (i) Defendant's existing data security

measures do not comply with the requirements imposed upon them by law; and (ii) in order to comply with their legal obligations and duties of care, Defendant must implement and maintain reasonable security measures, including but not limited to, injunctive relief:

    a.  Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

    b.  Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

    c.  Ordering that Defendant audit, test and train their security personnel regarding any new or modified procedures;

    d.  Ordering that Defendant segment PII, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems;

    e.  Ordering that Defendant purge, delete and destroy PII not necessary for its provisions of services in a reasonably secure manner;

    f.  Ordering that Defendant conduct regular database scans and security checks;

    g.  Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

     h.   Ordering Defendant to meaningfully educate its patients and their guarantors about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps they should take to protect themselves.

120.    Absent injunctive and declaratory relief, Plaintiffs and Class Members' PII, which Defendant possesses, continue to be at risk of further breaches.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request the following relief:

A.  For an Order certifying this action as a Class action and appointing Plaintiffs and their counsel to represent the Class;

B.  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' PII, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class Members;

C.  For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII compromised during the Data Breach;

D.  For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

E.  Ordering Defendant to pay for not less than seven years of credit monitoring services for Plaintiffs and the Class;

F.  For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

G.  For an award of punitive damages, as allowable by law;

H.  For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

I.  Pre- and post-judgment interest on any amounts awarded; and

J.  Such other and further relief as this court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, individually and on behalf of the Class, demand a trial by jury on all issues so triable.


Dated August 1, 2024.                    Respectfully submitted,


<u>/s/ Alexandra M. Honeycutt</u>
Alexandra M. Honeycutt (TN Bar No. 039617)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
ahoneycutt@milberg.com


Joel R. Rhine, NC Bar No. 16028 *
John A Bruno, NC Bar No. 54775 *
Ruth A. Sheehan, NC Bar No. 48069 *
**RHINE LAW FIRM, P.C.**
1612 Military Cutoff Rd., Suite 300
Wilmington, NC 28403
Telephone: (910) 772-9960
Email:  jrr@rhinelawfirm.com
        jab@rhinelawfirm.com
        ras@rhinelawfirm.com


*Pro hac vice forthcoming*

*Counsel for Plaintiffs and the Proposed Class*